UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAJI PATEL,<br><br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY and JEFFREY HOFFMAN,<br><br>    Defendants. | C.A. NO. |

# COMPLAINT

Pursuant to Fed. R. Civ. P. 8, Raji Patel brings this Complaint against the Massachusetts Institute of Technology and Jeffrey Hoffman, stating as follows:

## I.   Parties

1. Plaintiff Raji Patel ("Ms. Patel") is an individual with a place of residence in Sarasota, Florida.

2. Defendant Massachusetts Institute of Technology ("MIT") is an institution of higher learning with a place of business at 77 Massachusetts Avenue, Cambridge, Massachusetts.

3. Defendant Jeffrey Hoffman ("Professor Hoffman") is an individual with a place of business at 77 Massachusetts Avenue, Cambridge, Massachusetts.

## II.   Jurisdiction and Venue

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States, including

1

Title VII of the Civil Rights Act of 1964 (42 U.S.C., 2000e *et seq.*), the federal Equal Pay Act of 1963 (29 U.S.C., § 206(d) *et seq.*), and the Civil Rights Act of 1991 (42 U.S.C., §1981a *et seq.*).

5. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. This Court has personal jurisdiction over the claims asserted because, *inter alia*, the Defendants are residents of the Commonwealth of Massachusetts and engaged in the wrongful conduct set forth herein in this judicial district.

7. Venue is appropriate in this United States District Court because the acts and omissions at issue occurred primarily and substantially within the judicial district of the United States District Court for the Eastern District of Massachusetts.

### III.    Brief Summary of Pertinent Facts

8. Ms. Patel is a woman of Indian descent. As such, she is a member of two protected classes at issue in this matter: gender and race.

9. In 2002, Ms. Patel joined MIT to serve as Associate Director of the NASA Space Grant ("SG") Massachusetts Consortium at MIT (a program within the Aeronautics and Astronautics Department).

10. The SG program for universities and colleges is a Congressionally mandated program that has a university consortium in each state for the advancement of aerospace education and research in the United States.

11. In Massachusetts, the SG consortium is based at MIT and has 25 academic members.

12. At the times relevant to this matter, the Director of this program has been Professor Hoffman.

13. Unfortunately, throughout her employment at MIT, Professor Hoffman ran the program in a misogynistic and racially insensitive manner, creating and maintaining a hostile work environment for Ms. Patel that ultimately became unbearable and forced her resignation in November 2022.

14. In fact, Professor Hoffman's treatment of Ms. Patel bears many of the hallmarks of sexism and racism; recalling a bygone time that should have long-passed.  The treatment included:

- **Tacit slights and insults:** Professor Hoffman continuously treated Ms. Patel differently due to her gender and race.  These slights and insults were often subtle but were pervasive and prevented Ms. Patel from being accepted as a valued member of the team and purposefully prevented her from reaching her full potential at MIT.
- **Role Stereotypes/Restricting Participation Based on Gender and Race:**  Professor Hoffman created and reinforced the implementation of role stereotypes at work despite the qualifications of Ms. Patel and despite the fact that she was performing her job at an exemplary level (indeed, at the level of a Director) for over a decade without recognition.
- **Devaluing Females and Female Opinions:**  Professor Hoffman continually devalued Ms. Patel, her opinions, and her role within the program.  Again, this purposefully prevented Ms. Patel from fulfilling her role as a Director at MIT, from being granted the status of a Director at MIT, and reaching her full potential at MIT.
- **Preventing Wage and Title Advancement.**   Professor Hoffman purposefully and wrongfully prevented Ms. Patel from earning equitable pay and title designations (including the title of Director) throughout her tenure at MIT.

15. Throughout her tenure, Ms. Patel was more than qualified for the Associate Director position she undertook at MIT in 2002.

16. Among other things, Ms. Patel has an undergraduate degree in physics and a graduate degree in management from MIT.

17.  Despite this, Ms. Patel started with a lower salary than her predecessor who was a man.

18. Thus, from the very start, Ms. Patel was subject to unlawful discrimination.

19. Nonetheless, Ms. Patel, a single mother, accepted the position in good faith and with the hope that personal her hard work and achievement would pay off in the end.

20. Ms. Patel forged ahead, determined to prove her worth to the organization. In fact, from 2002-2021, Ms. Patel performed all the work that a full-time **Director** of the SG program would perform – among other things, managing the entirety of the SG program, including proposal writing, reporting, and dealing with consortium members in Massachusetts as well as counterparts in other state consortia and in Massachusetts state government.

21. Over the years, as a result of Ms. Patel's efforts, MIT was awarded several proposals from NASA and the Commonwealth of Massachusetts.

22. The funding from these awards has benefitted over 4000 students in Massachusetts.

23. Yet, throughout all this time, it was Professor Hoffman who solely retained the title of Director and refused to consider that Ms. Patel be afforded that title (or commensurate pay) at MIT, much less advocate on her behalf to be designated with that title (and the commensurate pay that would go with it).

24. Professor Hoffman took these actions despite the fact that these actions were detrimental to the program and its goals.

25. It is clear that Professor Hoffman's decisions were made for discriminatory reasons rather than legitimate business reasons.

26. In 2004, Ms. Patel set up and conducted a course called the MIT-KSC (Kennedy Space Center) program to teach MIT students important aspects of space operations.

27. Ms. Patel did this after further studies at the International Space University.

28. Unlike other employees of MIT with similar roles, Ms. Patel paid for these studies mostly at her own expense.

29. She conducted the MIT-KSC program annually until it was suspended during the Covid-19 pandemic.

30. Again, Ms. Patel's actions on behalf of MIT and her performance were exemplary.

31. Yet, unlike her male colleagues, and at the direction of Professor Hoffman, these efforts at MIT did not result in a promotion, title change or commensurate pay for Ms. Patel.

32. Knowing that Ms. Patel was doing the work of a Director in the SG program (but without the title or pay for that position), Professor Hoffman stepped back and allowed Ms. Patel to do the work.

33. In 2008, Ms. Patel pointed out that one of the most important aspects of the job of Director of the SG program was advocating for the program with Congress.

34. Ms. Patel's colleagues from other SG programs throughout the country were performing such advocacy. Professor Hoffman was not.

35. The advocacy was vital to the program.

36. So, Ms. Patel requested that she be named a Director. Professor Hoffman refused but allowed Ms. Patel to *informally* use the title "co-Director" (without staff recognition at MIT or commensurate pay) so that she could join the "SG Directors' Alliance", an advocacy committee of SG Directors throughout the country. In essence, the informal use of the term co-Director simply allowed Ms. Patel to do Professor Hoffman' work for him without any benefit to her.

37. Yet, Professor Hoffman still refused to recommend or appoint Ms. Patel to the position of "Director" and refused to see to it that Ms. Patel was fairly compensated for the role she was fulfilling on his and MIT's behalf.

38. In any event, using the informal term "co-Director" did allow Ms. Patel to work with the Massachusetts Congressional delegation to promote the SG program and work with the SG Directors' Alliance.

39. In addition, in that role, Ms. Patel visited the Massachusetts Congressional delegation once each year since 2008 to inform them about the program's accomplishments and advocate on its behalf.

40. Professor Hoffman and MIT received the intended benefit of the informal designation of Ms. Patel as "co-Director" – the Congressional delegation understood Ms. Patel to be *the Director* of the SG program and agreed to work with her over all those years.

41. Yet, Ms. Patel did not benefit from this informal designation. MIT never treated her by title or compensation as *either* a co-Director or Director.

42. The Defendants' refusal to treat or compensate Ms. Patel commensurate with her role, abilities, and job performance was based upon Ms. Patel's race and gender.

43. In 2018, Ms. Patel helped save the SG program from elimination after it had been removed from President Trump's proposed budget for that year.

44. Ms. Patel worked tirelessly with the entire Massachusetts Congressional delegation to gain support for the program.

45. Through direct efforts with Senator Elizabeth Warren, Ms. Patel convinced Senator Warren to appeal to her colleagues in other states to reinstate funding for the national SG program.

46. In 2020, and throughout the pandemic, Ms. Patel ensured that the program kept running and continued to receive funds from NASA.

47. In Ms. Patel's December 8, 2020 performance review, Professor Hoffman admitted that he did not have time to devote to the SG program and that Ms. Patel was doing the work of a Director.

48. He stated, *inter alia*:

    I could not be more pleased with Raji Patel's performance over this past year. The increasing demands of the MOXIE project have cut deeply into the time I can devote to Space Grant. Happily, Raji has picked up every bit of the slack and has kept Massachusetts Space Grant running smoothly. She has actually been functioning effectively as director and doing a great job. ….. We have learned that the Space Grant organizations in many states have had great difficulty in making this transition, but thanks to the excellent organization and hard work on Raji's part, Massachusetts Space Grant is in good shape.

49. Despite admitting this, Professor Hoffman continued to refuse to appoint, or advocate the appointment of, Ms. Patel as a Director or see to it that she received the compensation equivalent to her position.

50. As stated above, Ms. Patel took on all roles of a Director since at least 2008, but was stymied by Professor Hoffman at every turn in her effort to gain the actual title, and commensurate pay, at MIT.

51. MIT became aware of these issues and similarly refused to promote Ms. Patel or award her the title or pay of a Director.

52. These decisions were based on Ms. Patel's gender and race rather than any legitimate business interest.

53. Worse, Ms. Patel's loss was MIT's gain.  From 2008-2021, Ms. Patel did the job of SG Director full time, but was paid on a part-time salary because of the refusal to designate Ms. Patel a Director.

54. In September 2021, Ms. Patel wrote an augmentation proposal to NASA which required a full-time administrative effort from her.

55. Yet, Professor Hoffman refused to submit the proposal because it would increase Ms. Patel's salary to full-time.

56. On and after that date (and through the date of her termination), Professor Hoffman increased his discriminatory tactics aimed at Ms. Patel.

57. Appearing to see that Ms. Patel was at the end of her rope, Professor Hoffman began to openly contradict and undermine Ms. Patel in meetings with NASA personnel and Directors from other states.

58. These tactics were not only extremely demeaning to Ms. Patel as a woman and person of color, but hurt the program – leaving Ms. Patel to explain to NASA the contradictions created in the reports submitted by MIT.

59. In 2021, NASA notified all SG consortia about two new requirements from each state to be enacted in 2023 and 2024: (1) a site visit by NASA conducted by the Director of the program; and (2) an independent evaluation conducted by an outside evaluator selected and overseen by the Director.

60. Thus, by 2022, it was obvious that Ms. Patel needed to be formally named a Director at MIT to fulfill the new NASA requirements.

61. Professor Hoffman was advised of this fact repeatedly.

62. Professor Hoffman knew that women who oversaw other SG programs at other universities throughout the country were named Directors without faculty positions.  However, when Ms. Patel would point this out, Professor Hoffman would dismissively tell Ms. Patel: "that is not how we do it at MIT."

63. On November 30, 2022, Ms. Patel again informed Professor Hoffman that she needed to be recognized with the title of Director (a job, as set forth above, she was already performing) to fulfil the new requirements from NASA.

64. Again, Professor Hoffman refused to even consider the request, much less advocate for Ms. Patel.

65. By doing so, Professor Hoffman knew that he was preventing Ms. Patel from continuing in, or fulfilling, her position at MIT and the job she had been performing for almost two decades.

66. Thus, Professor Hoffman callously forced Ms. Patel's resignation based solely on her race and gender.

67. On January 20, 2023, shortly after Ms. Patel's departure, Daniel Hastings (Associate Dean of Engineering for Diversity, Equity & Inclusion, Cecil and Ida Green Education Professor of Aeronautics and Astronautics, and Department Head) circulated an email that refers to Ms. Patel's departure as follows:

    …we would be remiss not to acknowledge the ongoing issues of staff burnout, toxic workplace behavior, and sexist — even misogynistic — elements here and the role they played in the departure of another valued colleague. These elements are deeply contrary to our Departmental values to which I hope we all subscribe.

68. The matters set forth in this Complaint were presented first to the Massachusetts Commission Against Discrimination ("MCAD") and to the Equal Employment Opportunity Commission ("EEOC") in a Charge of Discrimination as required by G.L. c. 151B and the federal statutes cited herein.

69. The case was filed at the MCAD on February 27, 2023 and assigned MCAD Docket No. 22BEM00533 and EEOC Docket No. 16C-2023-00971.

70. Thereafter, Ms. Patel engaged in the MCAD/EEOC administrative process, including the MCAD's investigative process, for a period exceeding 90 days.

71. On June 1, 2023, Ms. Patel requested that the matter be withdrawn from the MCAD and EEOC so that she could pursue her private right of action in Massachusetts Superior Court.

72. On June 23, 2023, at Ms. Patel's request, the MCAD dismissed the MCAD action so that Ms. Patel could pursue this private right of action.

73. On June 27, 2023, at Ms. Patel's request, the EEOC issued a Notice of Right to Sue permitting Ms. Patel to file this action.

74. Ms. Patel has properly exhausted her administrative requirements at the MCAD and the EEOC. Therefore, all matters asserted herein are now properly before this Court.

IV. **Causes of Action**

### COUNT I
(Violation of Mass. Gen. Laws, Chapter 151B v. MIT and Professor Hoffman)

75. Ms. Patel repeats and realleges each of the foregoing allegations and incorporates them herein by reference.

76. Under relevant law, Ms. Patel is a member of two protected classes; gender and race.

77. Under G.L. 151B, it is unlawful to discriminate against a person based upon gender or race.

78. In violation of law, the Defendants created and maintained a hostile work environment targeted at Ms. Patel's gender and race and discriminated against Ms. Patel based solely upon her gender and race.

79. The Defendants' conduct shows a willful, discriminatory animus in violation of Mass. G. L. c. 151B.

80. As a proximate result of the Defendants' willful, discriminatory conduct, Ms. Patel suffered harm.

81. Ms. Patel is entitled to recover all remedies set forth in G.L. c. 151B, including but not limited to compensatory damages, front and back pay, punitive damages, interest, and attorney's fees.

## COUNT II
(Violation of Title VII v. MIT and Professor Hoffman)

82. Ms. Patel repeats and realleges each of the foregoing allegations and incorporates them herein by reference.

83. Title VII of the Civil Rights Act of 1964 (42 U.S.C., 2000e *et seq.*) ("Title VII") makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1), or "to limit, segregate, or classify [her] employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee," 42 U.S.C. § 2000e–2(a)(2), based on a protected characteristic such as gender or race.

84. Title VII prohibits the types of willful discriminatory employment practices in which the Defendants here engaged, including sexual harassment in the form of creating and maintaining a hostile and abusive work environment, failing to fairly and equitably compensate and promote Ms. Patel, engaging in discriminatory retaliation against Ms. Patel, and constructively discharging Ms. Patel.

85. The conduct that the Defendants engaged in, and to which they subjected Ms. Patel, was continuous and was so severe and pervasive that it altered the conditions of Ms. Patel's employment and created an abusive work environment.

86. The environment created by the Defendants was both objectively and subjectively offensive.

87. The environment created by the Defendants was one that a reasonable person would find hostile or abusive.

88. The environment created by the Defendants was one that Ms. Patel in fact did perceive to be hostile and abusive.

89. As set forth above, the frequency of the discriminatory conduct was continuous and the severity of the conduct was objectively hostile, abusive and humiliating.

90. Defendants' discriminatory conduct unreasonably interfered with Ms. Patel's work performance.

91. The harassment to which Ms. Patel was subjected was of a kind and to a degree that any reasonable person would have felt that it affected the conditions of her employment.

92. Ms. Patel suffered an accumulated effect from the repeated verbal attacks, consistent intimidation, and open hostile work environment to which she was subjected. Defendants' persistent conduct amounted to sexual harassment and discrimination.

93. It is clear from the consistency of the harassing conduct that Ms. Patel endured that its purpose was to create a hostile work environment.

94. The conduct set forth herein undermined Ms. Patel's ability to succeed at her job and led ultimately to her constructive discharge.

95. Title VII also contains an anti-retaliation provision that the Defendants violated.  Under the statute, it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a).

96. Defendants engaged in such retaliation because Ms. Patel opposed Professor Hoffman's unlawful employment practices and sought a Director assignment and just compensation.

97. Professor Hoffman's conduct became known by MIT and, thereafter, MIT supported and condoned the conduct.

98. As a proximate result of the Defendants' willful, discriminatory conduct in violation to Title VII, Ms. Patel suffered harm.

99. Ms. Patel is entitled to recover all remedies set forth in Title VII, including but not limited to compensatory damages, front and back pay, punitive damages, interest, and attorney's fees.

## COUNT III
(Violation of the Equal Pay Act of 1963 (29 U.S.C., § 206(d) *et seq.*) v. MIT and Professor Hoffman)

100.     Ms. Patel repeats and realleges each of the foregoing allegations and incorporates them herein by reference.

101.     Despite numerous requests for equal and just compensation, Professor Hoffman saw to it that Ms. Patel be paid less than him and other male employees for equivalent work on jobs requiring equal skill, effort and responsibility that were performed under similar working conditions.

102.     At the direction of Professor Hoffman, MIT failed and refused to designate Ms. Patel a Director and purposefully paid Ms. Patel less than employees of the opposite sex for work on jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

103.     Indeed, Ms. Patel actually performed greater work on the equivalent job as Professor Hoffman, but was paid less and not provided the Director designation.

104. The pay differential between Ms. Patel and her male counterparts was not the product of a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production, or any factor other than gender.

105. The conduct of the Defendants violated the Equal Pay Act of 1963 (29 U.S.C., § 206(d) *et seq.*) (the "Equal Pay Act").

106. Ms. Patel was harmed by the violations of the Equal Pay Act.

107. Ms. Patel demands all damages, costs, interest and attorney's fees, and other remedies to which she is entitled under the Equal Pay Act.

**COUNT IV**
(Civil Rights Act of 1991 (42 U.S.C., §1981a *et seq.*) v. MIT and Professor Hoffman)

108. Ms. Patel repeats and realleges each of the foregoing allegations and incorporates them herein by reference.

109. The Civil Rights Act of 1991 (42 U.S.C., §1981a *et seq.*) (the "Civil Rights Act") prohibits all discrimination in employment based on race, gender, color, religious, or ethnic considerations.

110. By the conduct alleged herein and to be further proven at trial, the Defendants violated the Civil Rights Act.

111. Ms. Patel is a member of two protected classes at issue; race and gender.

112. As set forth above, Ms. Patel suffered adverse employment actions and treatment based upon her race and gender.

113. Ms. Patel was qualified for the position at issue and, indeed, performed the job at an exceptional level.

114. However, Ms. Patel was treated less favorably than others not in her protected classes.

115. Defendants are unable to produce a legitimate, non-discriminatory reason for their adverse employment actions taken against Ms. Patel.

116. Ms. Patel's protected status was a determinative factor in the employment decisions made by the Defendants and the Defendants' purported reasons for their employment decisions are mere pretexts for discrimination.

117. The Civil Rights Act also prohibits an employer from retaliating against an employee for opposing an unlawful employment practice such as discrimination based on race, color, religion, sex, or national origin.

118. Defendants violated the Civil Rights Act by retaliating against Ms. Patel for her requests for a Director designation and for equal, commensurate pay for her work.

119. In making these requests, Ms. Patel was engaged in protected opposition to discrimination.

120. Ms. Patel was subject to adverse employment actions because of her opposition to the discriminatory conduct set forth herein.

121. A causal connection exists between the protected activity in which Ms. Patel engaged and the adverse actions taken by the Defendants.

122. Ms. Patel has been harmed by the violations of the Civil Rights Act.

123. Ms. Patel demands all damages, costs, interest and attorney's fees, and other remedies to which she is entitled under the Civil Rights Act

**DEMAND FOR JURY**

Ms. Patel demands a trial by jury on all counts of this Complaint that are so triable.

**WHEREFORE**, Ms. Patel requests that this Honorable Court:

(1) Enter Judgment in her favor on all counts of this Complaint and award all damages, costs, interest and attorney's fees recoverable at law and in equity on each count;

(2) Enter a Judgment against MIT and Professor Hoffman on all counts of this Complaint, find that the Defendants knowingly and willfully discriminated against Ms. Patel, and award Ms. Patel all damages, costs, interest and attorney's fees that are recoverable at law and in equity;

(3) Award all damages, including but not limited to, compensatory damages, front pay, back pay, wages, emotional distress, punitive damages, costs and attorney's fees to which Ms. Patel is entitled at law and in equity;

(4) Order reinstatement of Ms. Patel to her position at MIT and, further, order MIT to appoint Ms. Patel to the position of Director with commensurate pay; and

(5) Award such other and further relief as this Court finds just and equitable.

**PLAINTIFF RAJI PATEL,**

By her attorney,

/s/ *Timothy J. Perry*
Timothy J. Perry (BBO# 631397)
*tperry@pkcounsel.com*
**PERRY KRUMSIEK LLP**
One Boston Place, Suite 2600
Boston, MA  02108
(617) 720-4300
fax (617) 720-4310

Date: July 5, 2023