UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-11500-RGS

RAJI PATEL

v.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY
and JEFFERY HOFFMAN

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SANCTIONS

July 25, 2024

STEARNS, D.J.

Plaintiff Raji Patel filed this action against her former employer, Massachusetts Institute of Technology (MIT), and former supervisor, Jeffery Hoffman, alleging violations of state and federal antidiscrimination law and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). After the court granted in part and denied in part defendants' motion to dismiss portions of several counts, the case proceeded to fact discovery. As part of that process, defendants issued requests to Ms. Patel on October 31, 2023, and December 1, 2023, for production of documents. Ms. Patel produced 42 pages in response to these requests – 27 pages on February 7, 2024; 4 pages on February 22, 2024, and May 8, 2024; and 11 pages on May 16, 2024.

That last production is the subject of the instant motion. Defendants accuse Ms. Patel[1] of forging one of the emails produced by counsel and seek imposition of sanctions. Because of the seriousness of the allegation, the court expedited briefing and convened an evidentiary hearing on the motion.

## DISCUSSION

A district court has inherent authority to impose sanctions on a party for engaging in fraud or bad-faith litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991); *see also United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999) (noting that the court's "implicit powers include the judicial authority to sanction counsel for litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceedings"). This authority arises not from the Federal Rules of Civil Procedure but instead is "rooted in the chancellor's equity powers, to process litigation to a just and equitable conclusion," and thus encompasses "the ability to do whatever is reasonably necessary to deter abuse of the judicial process." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) (internal quotation marks and citations omitted).

---

[1] Ms. Patel's counsel is not accused of any wrongdoing, and the court is satisfied that he produced the email in good faith, without knowing that it had been forged.

2

The court begins its analysis with the question of whether sanctionable conduct has occurred.  Because Ms. Patel does not dispute MIT's assertion that there is no record of the email produced on May 16, 2024 (Produced Email) on the MIT server, resolution of this question hinges on whether it is clear from the record that Ms. Patel forged the email or whether there is some other plausible explanation for its absence on the server.  Several factors convince the court that fraud, and not innocent mistake, accounts for the discrepancy.

First, even putting aside Ms. Patel's contradictory statements on the subject during her deposition, the explanations which she now proposes for why MIT cannot find any record of the Produced Email strain credulity.  It makes no sense, for example, for the email to have been a draft which she printed but never sent given the inclusion of a date stamp and to/from lines on the printout.  And as for the assertion that "the email was sent but later deleted from the MIT server," Patel Aff. [Dkt # 32] ¶ 4, it is not clear how deleting the email from her sent box would simultaneously remove it from the inboxes of Mr. Hoffman and Helen Halaris, the purported recipients.[2]

---

[2] There is no evidence that MIT intentionally deleted all copies of the email from the server.  Nor would it make sense for MIT to have done so, given Ms. Patel's contention that the evidence is not relevant to her claims.

Second, the timing and content of the Produced Email strike the court as highly suspicious. The Produced Email was purportedly sent at the exact same time – September 20, 2021, at 9:18 AM – as another email (September 20 Email) from Ms. Patel,[3] and it includes strikingly similar language as a prior email (September 17 Email) embedded within the September 20 Email. *Compare* Steinberg Aff. [Dkt # 28], Ex. A, *with id.*, Ex. B. Indeed, the main differences[4] between the Produced Email and the September 17 Email are that the Produced Email is directed solely to Mr. Hoffman rather than to all participants on the chain and that it includes the additional text "[y]our only focus is my salary increase which you don't want." *Id.*, Ex. A. The Produced Email, in other words, reproduces the September 17 Email but makes Ms. Patel's complaints about pay and unfair treatment more explicit.

Third, the Produced Email itself bears several telltale signs of forgery. It opens with a "mailto" line, even though such a line should (per the

---

[3] MIT's Senior IT Security Engineer, Paul Wernau, testified during the hearing that, while not impossible, it was improbable for two emails to be sent at the exact same time.

[4] The Produced Email also indicates that Mr. Hoffman "refuse[d] to submit" the proposal, *id.*, Ex. A, which is inconsistent with her statement in a September 19, 2021, email (the validity of which is undisputed) that Mr. Hoffman was "OK with the proposal and budget as is," *id.*, Ex. B. The seeming inaccuracy further compels the conclusion that the Produced Email was forged.

uncontradicted testimony of Mr. Wernau) only appear if the email was being forwarded. The "mailto," moreover, contains a second, unpaired caret at the end, something that would never appear in a legitimate email. The court also finds it significant that the Produced Email inexplicably includes (after a large gap) the signature block for Mr. Hoffman. The logical explanation under the circumstances is that Ms. Patel removed everything from "Thanks Helen!" through "On Sep 17, 2021, at 6:52 AM, Raji R Patel <rpatel@mit.edu" from the September 20 Email to create the Produced Email.

      Having concluded that Ms. Patel engaged in sanctionable conduct, the court must now determine *what* sanction is appropriate here. At the outset, the court will allow the portion of the motion seeking to (1) prohibit Ms. Patel from introducing the forged document into evidence or substantively relying upon it during trial; and (2) allow defendants to recoup any costs expended in researching the forgery and pursuing the instant motion. These sanctions flow naturally from the finding of forgery itself.

      The court will, after careful consideration, also allow the motion to the extent defendants seek to use the Produced Email for impeachment purposes during trial and/or pursue a jury instruction as to the evidentiary weight of the forgery on the issue of Ms. Patel's trustfulness. This is doubly so, as Ms.

Patel's failure to take responsibility for the forgery (and shifting narratives in response to the accusation of forgery) has a direct bearing on her credibility as a witness.

The court will not, however, preclude Ms. Patel from asserting that she complained about her pay contemporaneously to Mr. Hoffman. Although her conduct is troubling, the court credits Ms. Patel's counsel's assertion that he had received the email before being retained and had no intention of substantively using it during the proceeding. It would be unnecessarily harsh under such circumstances to limit Ms. Patel's ability to put forward her case at trial.

## ORDER

For the foregoing reasons, defendants' motion for sanctions is ALLOWED IN PART and DENIED IN PART.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE